Kenneth Richard **LINDBERG,**
petitioner, **Appellant,**

v.

**COMMISSIONER OF PUBLIC
SAFETY, Respondent.**

**No. C5–92–1604.**

Court of Appeals of Minnesota.

April 6, 1993.

Samuel A. McCloud, Dean S. Grau, Barry Hogen, Minneapolis, for petitioner, appellant.

Hubert H. Humphrey, Atty. Gen., Joel A. Watne, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by HUSPENI, P.J., and PETERSON and FOLEY,* JJ.

## OPINION

PETERSON, Judge.

Appellant Kenneth Lindberg was arrested for driving under the influence of alcohol. The Commissioner of Public Safety revoked his driver's license after his alcohol concentration level tested over .10. Appellant petitioned for judicial review. The trial court sustained the Commissioner's revocation. Appellant claims the trial court erred by admitting evidence of test results without proper foundation and by holding he did not have to be advised of his right to counsel after testing. We affirm.

## FACTS

Appellant was arrested by St. Louis County Deputy Bradley Anderson on March 7, 1992 for driving under the influence of alcohol. Anderson read the implied consent advisory to appellant. The advisory informed him of his right to consult an attorney before deciding whether to submit to testing of his alcohol concentration level. Appellant exercised this right, then agreed to take a urine test.

Anderson obtained appellant's urine specimen, sealed the specimen bottle, signed the seal, placed the bottle in a pre-ad-dressed box, sealed and signed the box, then placed the box in the office mailbag. The kit was received by the Bureau of Criminal Apprehension (BCA) on March 10, 1992. Two tests of the specimen were conducted by laboratory analyst Anne Manly in March 1992. BCA procedures require analysts to date and to initial the seals before breaking them. The seals indicate that Manly followed these procedures when conducting the tests.

On the same day that Manly conducted the tests, analyst Lori Feltis conducted quality control measurements of the tests and deemed they were accurate. The specimen was then frozen in a locked vault, which was accessible only by BCA analysts and their supervisor. Anne Manly subsequently retired. The Attorney General's office requested that appellant's urine specimen be tested by another analyst so that analyst could testify at trial about the laboratory analysis.

On June 26, 1992, Lori Feltis conducted a re-analysis of the specimen. Feltis observed Manly's initials on the kit's seals, indicating Manly had received the kit in a sealed condition and had broken the seals. The re-analysis test result showed a .134 alcohol concentration level. Feltis testified that the only effect freezing would have had on the specimen was that the alcohol concentration level would decrease slightly. BCA records indicated that Manly's test results were higher than .134.

## ISSUES

1. Was respondent required to produce both Manly and Feltis as witnesses?

2. Was there sufficient foundation to permit admission of the laboratory report prepared by Feltis?

3. Did the implied consent advisory read to appellant improperly fail to advise him of his post-test right to counsel under Minn.Stat. § 169.123, subd. 2(b)(6) (Supp. 1991)?

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

## ANALYSIS

### I.

■ Under Minn.Stat. § 634.15, subd. 1(a) (1990) "[a] report of the facts and results of a laboratory analysis or examination" is admissible in evidence in an implied consent hearing if the report "is prepared and attested by the person performing the laboratory analysis or examination in any laboratory operated by the bureau of criminal apprehension." But, under Minn.Stat. § 634.15, subd. 2(a) (1990), an accused person may request that the person who performed the analysis or examination and the report testify in person at the trial.

■ Appellant argues that Minn.Stat. § 634.15, subd. 2(a) requires respondent to produce both Manly and Feltis as witnesses because both conducted tests on his specimen. Appellant misconstrues the statute. Minn.Stat. § 634.15, subd. 2(a) requires respondent to produce only the person who performed the laboratory analysis and prepared the report offered as evidence at trial. In this case, although two persons conducted an analysis, only one report was offered as evidence. Respondent produced Feltis, the analyst who prepared the report offered as evidence, to testify. Because no report of the analysis conducted by Manly was offered as evidence, Minn.Stat. § 634.15, subd. 2(a) did not require Manly to testify in person at trial.

### II.

■ Appellant claims the trial court erred by finding the procedures followed by Feltis during her re-analysis of the specimen were sufficient foundation for admission of the test result. Findings of fact are not overturned unless clearly erroneous. Minn.R.Civ.P. 52.01. When the "findings are reasonably supported by the evidence, they are not clearly erroneous and must be affirmed." *Citizens State Bank v. Leth*, 450 N.W.2d 923, 925 (Minn.App.1990). Rulings on the admissibility of evidence are not overturned absent a showing of abuse of discretion. *State v. Sneva*, 353 N.W.2d 134, 134 (Minn.1984).

The proponent of a chemical or scientific test must establish that the test itself is reliable and that its administration in the particular instance conformed to the procedure necessary to ensure reliability. *State v. Dille*, 258 N.W.2d 565, 567 (Minn. 1977). Appellant claims that without Manly's testimony, it is unknown whether the specimen was contaminated during her initial tests.

In *Dille*, the defendant challenged the foundation for the results of a blood test because the state had not introduced direct evidence that the needle used to collect the blood specimen had been sterilized. *Id.* There was no testimony from the person who sterilized the needle to prove it had been properly sterilized. *Id.* The person who drew the blood specimen testified the needle had not been used before, a different needle was used on each patient, and the needles were disposed of after each use. *Id.* at 567–68. The supreme court found

> that the prosecution has the burden to prove that contaminants have not adversely affected the reliability of the test. In this case, however, sufficient indicia of reliability in the testing process were present so as not to preclude admissibility on this ground. The blood sample was taken in an hospital by a medical technologist with a needle that was kept with other equipment for drawing blood, and that had not been used before. In these circumstances, the prosecution established prima facie proof of the trustworthiness of the test's administration.

*Id.* at 568.

■ Similarly, in the present case, there was no direct evidence that Manly had properly handled the specimen. However, Feltis testified that the markings on the specimen indicated to her what had happened to the specimen before her analysis. She testified that BCA procedures require the person who breaks the seals also to initial them. Manly's initials on the seals indicate that the kit was sealed when it arrived at the BCA and that Manly broke the seals. Feltis also testified that after a specimen is tested, it is frozen in a locked

vault that is accessible only by BCA analysts and their supervisor. Feltis obtained the specimen, which appeared normal, from the vault and conducted a re-analysis of the specimen. As in *Dille,* this evidence was prima facie proof that the test's administration was trustworthy.

The defendant in *Dille* also argued that the state had not identified a white chemical found in the specimen bottle. *Id.* The court found:

> Although it would have been desirable if the prosecution had identified the substance and had disclosed its effect on the accuracy of the test, the fact that the bottle and its contents were furnished as a blood-testing kit by the Bureau of Criminal Apprehension provided a sufficient indicium of reliability to establish the prima facie admissibility of the test results. It was then incumbent upon defendant to suggest a reason why the blood test was untrustworthy.

*Id.; see also State, Dep't of Pub. Safety v. Habisch,* 313 N.W.2d 13, 16 (Minn.1981) (after state established sufficient foundation to admit test result, defendant was free to challenge foundation but did not do so).

In the present case, the BCA procedures as explained were sufficient to ensure the reliability of the re-analysis, and thereby to establish the prima facie admissibility of the test result. Furthermore, respondent disclosed the effect of the three month delay on the frozen specimen before the re-analysis was done. Feltis testified that the only effect of freezing the specimen over a period of time was that the alcohol concentration level would decrease. Therefore, the evidence goes beyond what is required by *Dille* and, absent evidence produced by appellant that the test result was untrustworthy, the test result from the re-analysis was admissible. Other than pure speculation, appellant has presented no evidence that the test result was untrustworthy.

The trial court's findings are reasonably supported by the evidence and are not clearly erroneous. The trial court's conclusion that there was sufficient foundation for admission of the test result from the re-analysis is supported by the evidence and was not an abuse of discretion.

### III.

Appellant also argued that the implied consent advisory read to him failed to properly advise him of a post-test right to counsel under Minn.Stat. § 169.123, subd. 2(b)(6) (Supp.1991). Appellant conceded at oral argument that this issue has been decided by previous cases. *Friedman v. Commissioner of Pub. Safety,* 473 N.W.2d 828, 835 (Minn.1991) does not require that a police officer advise a driver of the right to counsel after testing when the officer has already advised the driver of the right to counsel before testing. *Dufloth v. Commissioner of Pub. Safety,* 492 N.W.2d 277, 279 (Minn.App.1992), *pet. for rev. denied* (Minn. Dec. 15, 1992); *Przymus v. Commissioner of Pub. Safety,* 488 N.W.2d 829, 833 (Minn.App.1992), *pet. for rev. denied* (Minn. Sept. 15, 1992).

### DECISION

Respondent was not required to produce Manly as a witness since her test report was not offered as evidence. There was sufficient foundation to admit the test result from the re-analysis conducted by Feltis according to BCA procedures. The implied consent advisory read to appellant did not improperly fail to advise him of his post-test right to counsel.

Affirmed.