Argued and submitted April 30, affirmed August 11, 2004

STATE OF OREGON,
*Respondent,*

*v.*

WILLIAM THACKABERRY,
*Appellant.*

TM0120848; A117211

95 P3d 1142

Jamesa J. Drake, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter A. Ozanne, Executive Director.

Jonathan Fussner argued the cause for respondent. On the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Joanna L. Jenkins, Assistant Attorney General.

Before Haselton, Presiding Judge, and Linder and Ortega, Judges.

LINDER, J.

**LINDER, J.**

Defendant appeals his conviction for driving under the influence of intoxicants (DUII). *See* ORS 813.010. In his original brief to this court, he assigned error to the trial court's refusal to give a proposed jury instruction. After the state filed its respondent's brief, the United States Supreme Court issued its decision in *Crawford v. Washington,* ____ US ____ , 124 S Ct 1354, 158 L Ed 2d 177 (2004). In light of that decision, defendant moved for leave to file a supplemental brief raising a further claim of error under *Crawford*. We granted the motion and also gave the state leave to respond to defendant's further claim of error. In his supplemental brief, defendant asserts that the trial court violated his constitutional right to confrontation by "permitting the introduction of the laboratory report [confirming the presence of methamphetamine and amphetamine in defendant's urine] without the accompanying testimony of the expert who conducted the urinalysis and wrote the report." In so arguing, defendant acknowledges that the issue was not preserved at trial, but he asserts that we should reach the issue as plain error. As we explain, we disagree. We therefore affirm.[1]

Defendant was stopped by a police officer after the officer observed that defendant's license plate light was broken and saw his tires touch the fog line. The officer had defendant perform field sobriety tests. After defendant failed some of those tests, the officer arrested him and transported him to the police station, where defendant provided a urine sample. At trial, without objection, the state introduced into evidence a toxicology report signed by a Department of State Police criminalist that "confirm[ed] the presence of methamphetamine and amphetamine" in defendant's urine sample. Defendant was convicted of DUII.

We begin with the settled principles of the so-called "plain error" doctrine. Notwithstanding a failure to preserve an issue at trial, "the appellate court may consider an error of law apparent on the face of the record." ORAP 5.45(1). To be plain error, the error must satisfy three criteria: (1) it must

---

[1] We reject without discussion defendant's challenge to the court's refusal to give one of his proposed jury instructions.

be an error "of law"; (2) it must be "apparent," meaning the point of law must be obvious, that is, not reasonably in dispute; and (3) it must appear on the face of the record, meaning the court need not look beyond the record to identify the error or "choose between competing inferences, and the facts constituting the error must be irrefutable." *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381-82, 823 P2d 956 (1991). Even if the court concludes that all three of those criteria are met, it must exercise discretion in determining whether to consider the error, a decision that "should be made with utmost caution" as review of plain error is "contrary to the strong policies requiring preservation and raising of error." *Id.* at 382. Whether an error qualifies as plain error is answered by reference to the law "as of the time of the appellate decision[.]" *State v. Jury*, 185 Or App 132, 139, 57 P3d 970 (2002), *rev den*, 335 Or 504 (2003).

■ In debating whether admission of the laboratory report in this case qualifies as plain error, the parties' arguments focus on the second criterion—whether the point of law involved is "obvious, that is, not reasonably in dispute." Defendant's argument boils down to the proposition that, under *Crawford*, it is beyond reasonable dispute that the laboratory report was not admissible without the accompanying testimony of the person who prepared it. The state's argument in response is that a significant and reasonable legal dispute exists as to whether *Crawford* applies to a laboratory report of the type admitted in this case.

We begin with a brief discussion of the holding in *Crawford*. There, the defendant faced criminal charges arising out of a fight with another man. To rebut the defendant's claim of self-defense, the state introduced a tape-recorded statement that the defendant's wife had made to police describing the fight. The defendant's wife did not testify at trial because of marital privilege. *Crawford*, ____ US at ____ , 124 S Ct at 1357. The Supreme Court held that admission of the wife's statement violated the federal Confrontation Clause[2] because the defendant had no opportunity to

---

[2] The Confrontation Clause of the Sixth Amendment to the United States Constitution provides:

"In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *."

cross-examine the wife, either at trial or before trial. *Id.* at _____ , 124 S Ct at 1374.

In so holding, the Court overruled *Ohio v. Roberts,* 448 US 56, 66, 100 S Ct 2531, 65 L Ed 2d 597 (1980), which permitted the admission of an unavailable witness's statement against a criminal defendant if the statement bore "adequate indicia of reliability." (Internal quotation marks omitted.) Instead, the Court announced that, "[w]here testimonial evidence is at issue, * * * the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Crawford,* _____ US at _____ , 124 S Ct at 1374. For purposes of our analysis in this case, we need not examine in detail the Court's rationale for adopting its new rule. It is enough to observe that the Court, based on its examination of the common law and historical underpinnings of the federal Confrontation Clause, concluded that the prohibition against the admission of "testimonial" hearsay was absolute in circumstances in which the declarant had not been subjected to cross-examination at some point before trial and was not subject to cross-examination at trial because of the declarant's unavailability.

More important to our analysis is the sharp distinction that the court drew between "testimonial" and "nontestimonial" hearsay. As to nontestimonial hearsay, which includes business and official records, the Court observed that states have flexibility in developing rules of hearsay and that such evidence may be exempted altogether from Confrontation Clause scrutiny. *Id.* Also important to our analysis is the guidance—or, rather, the lack of it—that the Court gave as to what qualifies as testimonial hearsay. The Court expressly left "for another day any effort to spell out a comprehensive definition of 'testimonial.' " *Id.* It instead declared only that, "[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.*

*Crawford* thus frames more precisely the "plain error" question that we must answer: Is there a reasonable dispute as to whether a laboratory report of the results of a toxicology test performed on a urine sample is testimonial

hearsay? *Crawford* tells us that the distinction between testimonial and nontestimonial hearsay is all-important. But *Crawford* does little to aid us in determining when hearsay falls into the testimonial category. Expressly, the Court identified as "testimonial hearsay" prior *testimony* at a preliminary hearing, before a grand jury, or at a former trial. *Id*. It also identified statements made during "police interrogation." *Id*. A laboratory report of a toxicology test performed on a urine sample neither qualifies as, nor seems analogous to, testimony at a preliminary hearing, before a grand jury, or at a former trial. Nor, at least in any obvious way, is it a statement made during a "police interrogation" or closely analogous to one. On the other hand, a laboratory report may be analogous to—or arguably even the same as—a business or official record, which the Court in *Crawford* suggested *in dictum* would not be subject to its holding.[3] *See id*. at ____ , 124 S Ct at 1367.

But we need not decide for present purposes whether the report is or is not testimonial in nature. The question before us, for purposes of the plain error analysis, is only whether the legal point is open to reasonable dispute. Given the limitations of the guidance that *Crawford* offered, we conclude that there is a reasonable dispute whether admission of the laboratory report in this case, without an opportunity for cross-examination of its author at trial, was error.

■    Even assuming that the laboratory report is testimonial in nature and that its admission was plain error, we would not exercise our discretion to consider defendant's challenge to its admission. Although not an exhaustive list, the factors that we may consider in deciding whether to reach a plain error include

> "the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in

---

[3] The statute authorizing admission of an analysis of a controlled substance or sample requires it to be in the form of "a certified copy of the analytical report signed by the director of a state police forensic laboratory or the analyst or forensic scientist conducting the analysis[.]" ORS 475.235(4).

another way, *i.e.*, whether the trial court was, in some manner, presented with both sides of the issue and given an opportunity to correct any error."

*Ailes,* 312 Or at 382 n 6.

■     Defendant argues that we should exercise our discretion to review his claim of error because he has a substantial interest in receiving a fair trial in conformity with his fundamental right to confront the witnesses against him. But other factors weigh heavily—more heavily, we conclude—against exercising our discretion to reach defendant's claim of error. In particular, because defendant did not object to the admission of the laboratory report, the trial court was neither presented with defendant's objection nor given the opportunity to respond to it. Under the circumstances of this case, the likelihood is great that the record would have developed differently if defendant had objected. As the Oregon Supreme Court has held, ORS 475.235 permits a defendant to subpoena at state expense the criminalist who prepares a laboratory report and thus effectively provides a procedure by which a defendant is entitled to "select the method by which the state will prove the nature of the controlled substance that is involved in the case." *State v. Hancock,* 317 Or 5, 11, 854 P2d 926 (1993). In this case, there is no suggestion that the person who prepared the laboratory report was not available. Whether defendant in fact would have insisted on having the witness testify, if that were his option, is open to doubt. As the Supreme Court observed in *Hancock,* there are tactical reasons why a defendant might not do so. 317 Or at 11. But in all events, had defendant raised his confrontation objection to the laboratory report at trial, the record likely would have developed differently, with the result that the witness might have testified, or defendant might have expressly waived any right to have the witness testify. Under those circumstances, we will not consider defendant's claim of error for the first time on appeal.

Affirmed.