**STATE of Minnesota, Respondent,**

v.

**Scott CAULFIELD, Appellant.**

**No. A04–1484.**

Supreme Court of Minnesota.

Oct. 5, 2006.

Mike Hatch, Attorney General, State of Minnesota, Saint Paul, MN, Raymond F. Schmitz, Olmsted County Attorney, Daniel Paul Haugrud Reiff, Olmsted County Attorney, David F. McLeod, Assistant Olmsted County Attorney, Rochester, MN, for Respondent.

Roy G. Spurbeck, Assistant State Public Defender, Office of the Minnesota State Public Defender, Minneapolis, MN, for Appellant.

## OPINION

HANSON, Justice.

Appellant Scott Caulfield challenges his conviction of possession of a controlled substance with intent to sell. Caulfield argues that a Bureau of Criminal Apprehension (BCA) laboratory report identifying a substance seized from him as cocaine was testimonial evidence under *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). He contends that his confrontation rights were violated because the report was admitted into evidence even though the BCA analyst who prepared the report did not testify at trial. He also argues that Minn.Stat. § 634.15 (2004) violated his confrontation rights under the United States Constitution because it required him to request the testimony of the analyst 10 days before trial.[1] We hold

---

1. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." U.S. Const. amend.

VI. The Minnesota Constitution contains virtually identical language: "The accused shall enjoy the right * * * to be confronted with

that the report is testimonial and that its admission, under the statute permitting its introduction without the testimony of the analyst, violated Caulfield's rights under the Confrontation Clause. We also determine that the error in admitting the report was not harmless beyond a reasonable doubt and therefore reverse and remand for a new trial.

During the fall of 2001, employees at Kathy's Pub in Rochester, Minnesota noticed the unusual behavior of Scott Caulfield, a frequent customer. Caulfield would repeatedly go into a back hallway or alley with people who had approached him in the bar, then return after 10 to 15 minutes.

On October 24, 2001, Rochester Police Officer James Novak and another Rochester policeman responded to a call from the bar prompted by Caulfield's behavior and the suspicion that Caulfield was dealing drugs out of the bar. The officers approached Caulfield and asked him to step outside, where Novak asked Caulfield whether he was selling drugs. Caulfield said he did not have drugs in his possession and consented to a search, which produced a small bottle with six plastic bags containing a fine white powder substance. Novak testified that Caulfield identified the substance as "drugs," then specified "cocaine."

Novak arrested Caulfield and seized the substance. Novak conducted a field test of the substance in one of the six plastic baggies and the substance tested positive for cocaine or cocaine solvents. The next day, Rochester Police Officer Tom Pingel also field tested the substance and obtained a positive result for cocaine.[2] Pin-

gel then sent the substance to the BCA lab in St. Paul to confirm the preliminary indication that the substance was cocaine. The BCA analyst produced a report stating that the substance contained cocaine.

Caulfield was initially charged with fifth-degree possession of a controlled substance, in violation of Minn.Stat. § 152.025, subd. 2(1) (2004). Later, the charge was upgraded to third-degree sale of a controlled substance in violation of Minn.Stat. § 152.023, subd. 1(1) (2004). Subsequently, the BCA report was issued, and the BCA analyst was added to the state's witness list for Caulfield's trial.

Caulfield waived his right to a jury trial. The state presented the testimony of Officer Pingel, who explained the results of his field test and opined that the drugs were packaged for sale; Officer Novak, who explained the results of his field test; and two bartenders from Kathy's Pub, who described their observations of Caulfield over a period of months. The state also offered the BCA report. Caulfield objected to the admission of the report based on the United States Supreme Court's ruling in *Crawford*. After a discussion of the applicability of *Crawford*, the district court admitted the report without explaining its reasoning. Caulfield did not testify.

The district court found Caulfield guilty of third-degree sale and the lesser-included offense of fifth-degree possession. The court convicted Caulfield of third-degree sale and sentenced him to an executed 27–month term.

The court of appeals recognized that the BCA report could be testimonial, but did not decide the issue. *State v. Caulfield,*

---

the witnesses against him." Minn. Const. art. 1, § 6.

**2.** Both Novak and Pingel testified that they used a "NIK kit" to test the substance seized

from Caulfield. Pingel indicated that a NIK kit is a standard method of making a preliminary identification of a controlled substance.

No. A04–1484, 2005 WL 1804353, at *4 (Minn.App. Aug.2, 2005). Instead, the court found that even if the district court abused its discretion in admitting the report, its admission was harmless beyond a reasonable doubt. *Id.* at *6.

## I.

Generally, evidentiary rulings—including the admission of chemical or scientific test reports—are within the discretion of the district court and will not be reversed absent a clear abuse of discretion. *State v. Fields,* 679 N.W.2d 341, 345 (Minn.2004); *Lindberg v. Comm'r of Pub. Safety,* 498 N.W.2d 301, 303 (Minn.App. 1993) (citing *State v. Sneva,* 353 N.W.2d 134, 134 (Minn.1984)). But whether the admission of evidence violates a criminal defendant's rights under the Confrontation Clause is a question of law this court reviews de novo. *State v. King,* 622 N.W.2d 800, 806 (Minn.2001).

Because the state does not counter Caulfield's assertion that the BCA lab report is a hearsay statement, the first point of dispute is whether the BCA report is testimonial. In *Crawford,* the Supreme Court revised the test for admission of testimonial out-of-court statements from a witness who is not present at trial. 541 U.S. at 59–62, 124 S.Ct. 1354. The Court rejected the test it had prescribed in *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), which allowed the admission of out-of-court statements that were either within a firmly rooted hearsay exception or bore particularized guarantees of trustworthiness. 541 U.S. at 59–62, 124 S.Ct. 1354. *Crawford* mandated that all testimonial statements be excluded unless the declarant is unavailable to testify at trial and the defendant has had a prior opportunity to cross-examine the declarant. 541 U.S. at 68, 124 S.Ct. 1354. The state does not contend that the BCA ana-

lyst was not available or that Caulfield had a prior opportunity for cross-examination.

The state argues that the BCA report is not testimonial, suggesting that it is not analogous to the specific examples of testimonial statements provided by the Supreme Court in *Crawford* (prior testimony and police interrogation) and noting the difference between a fact witness and a BCA analyst who can only provide foundational testimony. Further, the state argues that the preparation of such reports is nonadversarial, and that the analysts who prepare them are not directly involved in police investigations.

The state has the burden to prove that the BCA report is not testimonial. *State v. Burrell,* 697 N.W.2d 579, 600 (Minn.2005) (*citing State v. King,* 622 N.W.2d 800, 807 (Minn.2001)). The Supreme Court in *Crawford* declined to offer a comprehensive definition of "testimonial," but it did outline three general categories of testimonial statements:

- *ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially.

- extrajudicial statements * * * contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions.

- statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

541 U.S. at 51–52, 124 S.Ct. 1354 (internal citations and quotation marks omitted; bullet points added).

The BCA lab report bears characteristics of each of the three generic descriptions offered by the Supreme Court in *Crawford.* The lab analyst submitting the report attested to her findings. The report functioned as the equivalent of testimony on the identification of the substance seized from Caulfield. The report was prepared at the request of the Rochester police for the prosecution of Caulfield, and was offered at trial specifically to prove an element of the crimes with which he was charged. The report conforms to the types of statements about which the Court in *Crawford* expressed concern—affidavits and similar documents admitted in lieu of present testimony at trial. *See* 541 U.S. at 43, 51, 124 S.Ct. 1354.

We have said the critical determinative factor in assessing whether a statement is testimonial is whether it was prepared for litigation. *See State v. Bobadilla,* 709 N.W.2d 243, 250–51 (Minn.2006) (noting that this court and numerous others have "determined that the testimonial question turns on whether government questioners or declarants take or give a statement 'with an eye toward trial' "); *State v. Scacchetti,* 711 N.W.2d 508, 513 (Minn.2006) (recognizing that the central consideration in assessing potentially testimonial evidence was "whether either a declarant or government questioner is acting, to a substantial degree, in order to produce a statement for trial").

The BCA report was clearly prepared for litigation. The substance to be tested was seized from Caulfield by Rochester police as part of an investigation into his suspected drug dealing. It was sent to the BCA lab after the police had preliminarily determined that it was cocaine and Caulfield had been arrested. The BCA report was introduced by the state at trial for the purpose of proving beyond a reasonable doubt that the substance was cocaine.

As to the state's argument that state crime lab analysts play a nonadversarial role and are removed from the prosecutorial process, we have already rejected an approach that focuses on the intent of the declarant. *Bobadilla,* 709 N.W.2d at 251–52 n. 3 ("We do not think that an approach that makes the declarant's perspective dispositive gives adequate consideration to *Crawford's* fear of government abuses."). Further, the majority in *Crawford* stated, "The Framers would be astounded to learn that *ex parte* testimony could be admitted against a criminal defendant because it was elicited by 'neutral' government officers." 541 U.S. at 66, 124 S.Ct. 1354.[3]

The state refers us to cases from other states that, after *Crawford,* hold that lab reports are not testimonial. But these cases seem to wrongly focus on the reliability of such reports. *See Commonwealth v. Verde,* 444 Mass. 279, 827 N.E.2d 701, 705 (2005) (holding that drug certificates "merely state the results of a well-recognized scientific test determining the composition and quantity of the substance" and are within the state public records hearsay exception); *State v. Dedman,* 136 N.M. 561, 102 P.3d 628, 634–36 (2004) (holding a report not testimonial and within public records exception because it was prepared by agency that is not law enforcement); *State v. Cao,* 626 S.E.2d 301, 305 (N.C.Ct.App.2006) (holding that lab reports are nontestimonial business records only when the testing on which they are based is mechanical), *rev. denied* (N.C. Jan. 17, 2006); *Oregon v. Thackaberry,* 194 Or.App. 511, 95 P.3d 1142, 1145 (2004) (finding that lab report may be similar to a

---

**3.** *See also* Paul C. Giannelli, *Admissibility of Lab Reports: The Right of Confrontation Post–Crawford,* 19 Crim. Just., Fall 2004, at 26, 30– 31 (discussing scandals at labs to underscore the need for cross-examination of lab report declarants).

business record), *rev. denied* (Or. Aug. 11, 2004). In *Crawford,* the Court observed, "Where testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to amorphous notions of 'reliability.'" 541 U.S. at 61, 124 S.Ct. 1354.

We are persuaded that the better line of cases are those that have held that lab reports are testimonial under *Crawford. See Shiver v. State,* 900 So.2d 615, 618 (Fla.Dist.Ct.App.2005) (finding that parts of affidavit related to maintenance of breathalyzer were testimonial because they were statements one would reasonably expect to be used prosecutorially and were made in circumstances that would lead an objective witness to reasonably believe the statements would be available for trial); *People v. Lonsby,* 268 Mich.App. 375, 707 N.W.2d 610, 618 (2005) (holding that lab report on identification of evidence was testimonial and inadmissible), *rev. denied* (Mich. Mar. 27, 2006); *People v. Rogers,* 8 A.D.3d 888, 780 N.Y.S.2d 393, 397 (N.Y.App.Div.2004) (holding that report of test of victim's blood alcohol, admitted to prove inability to consent, was testimonial); *State v. Crager,* 164 Ohio App.3d 816, 844 N.E.2d 390, 397, 399 (2005) (holding that DNA report was testimonial and admission without testimony of analyst who prepared it violated defendant's Confrontation Clause rights), *appeal accepted* (Ohio Apr. 26, 2006).

We conclude that the BCA lab report admitted at trial against Caulfield was testimonial evidence under *Crawford.*

**II.**

The BCA report was admitted in evidence pursuant to the notice-and-demand provisions of section 634.15, which permits the admission of "a report of the facts and results of any laboratory analysis or examination if it is prepared and attested by the person performing the analysis or examination in any laboratory operated by the Bureau of Criminal Apprehension."[4]  Minn.Stat. § 634.15, subd. 1(a) (2004). The statute allows a defendant who wants to cross-examine the analyst to "request, by notifying the prosecuting attorney at least ten days before the trial, that the [analyst] testify in person at the trial on behalf of the state." Minn.Stat. § 634.15, subd. 2(a) (2004). The statute does not explicitly state what the consequences will be if a defendant does not request that the analyst testify. The state argues that a defendant's failure to make the request results in a forfeiture of his confrontation rights. According to the state, the statute permits introduction without cross-examination unless the accused demands the person be present for trial. Caulfield objected at trial to the admission of the report. He conceded that he had not requested that the analyst testify at trial, but argued that section 634.15, "which purports to permit this evidence to be introduced without any further ado," violated Caulfield's constitutional rights under *Crawford.*

The construction and constitutionality of a statute are questions of law this court reviews de novo. *State v. Tennin,* 674 N.W.2d 403, 406 (Minn.2004).[5]

---

**4.** In 2003 the legislature substituted "results of any laboratory analysis" for "results of a laboratory analysis" in the language cited, and substituted the word "documents" for "reports" in the introductory clause of subdivision 1. *See* Act of May 12, 2003, ch. 29,

§ 1, 2003 Minn. Laws 298. The 2003 amendment also added authorization of the admission into evidence of chain-of-custody documentation. *See id.*

**5.** Although we have not addressed the validity of section 634.15, the court of appeals has

Our standard presumption is that the statute is constitutional and the party challenging the constitutionality of a statute bears the burden of proving that it is unconstitutional beyond a reasonable doubt. *State v. Frazier*, 649 N.W.2d 828, 832 (Minn.2002).

■ The state argues that Caulfield "forfeited" his opportunity to contest the admission of the report by failing to comply with section 634.15. But the state fails to recognize that if Caulfield were deemed to have forfeited his objection under the Confrontation Clause, by not requesting the analyst's testimony at least 10 days before trial, we could still review his argument under the plain error standard. *See State v. Osborne*, 715 N.W.2d 436, 441 (Minn.2006) (citing *State v. Vick*, 632 N.W.2d 676, 684 (Minn.2001), for the proposition that review of evidentiary errors implicating constitutional rights can be forfeited); Minn. R.Crim. P. 31.02 (allowing for plain error review when an error affects substantial rights). Instead, the state argues that any error in admitting the report was harmless beyond a reasonable doubt—our standard for constitutional errors. See *State v. Juarez*, 572 N.W.2d 286, 291 (Minn.1997). As such, we read the state's argument to be one of waiver, rather than forfeiture, and analyze it accordingly.

The confrontation right is not absolute. *See Maryland v. Craig*, 497 U.S. 836, 844, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990); *see also Cooper v. California*, 386 U.S. 58, 62 n. 2, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967)

(noting that the Confrontation Clause does not require the prosecution to call all possible witnesses). Further, *Crawford* did not eliminate hearsay exceptions that were accepted at the time of the drafting of the Constitution. 541 U.S. at 56 n. 6, 124 S.Ct. 1354; *see State v. Martin*, 695 N.W.2d 578, 585–86 (Minn.2005) (finding a continuing exception for dying declarations). And confrontation rights can be waived at trial by certain wrongful actions. *See Illinois v. Allen*, 397 U.S. 337, 345–46, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970) (holding that defendant who engaged in disruptive conduct during trial and was expelled from courtroom "lost his right" to confront witnesses against him); *State v. Gillam*, 629 N.W.2d 440, 450–52 (Minn.2001) (same). Thus, we have held that confrontation rights are not among those (right to a jury trial and right to counsel) that require an affirmative waiver in writing or on the record. *Osborne*, 715 N.W.2d at 442. We have found that a defendant who absents himself from the courtroom waives his Sixth Amendment right to be present (and confront witnesses). *State v. Worthy*, 583 N.W.2d 270, 277–78 (Minn.1998). We have also found that the waiver by wrongdoing doctrine survives *Crawford*. *See Davis v. Washington*, 547 U.S. ——, 126 S.Ct. 2266, 2280, 165 L.Ed.2d 224 (2006); *Crawford*, 541 U.S. at 62, 124 S.Ct. 1354; *State v. Wright*, 701 N.W.2d 802, 814–15 (Minn. 2005) (discussing forfeiture of the right of confrontation by procuring the unavailability of a witness); *judgment vacated and*

done so in two pre-*Crawford* cases. In *State v. Pearson*, the court of appeals approved section 634.15, characterizing the act as a permissible shift of the burden of proof by the legislature of a kind that this court had approved. 633 N.W.2d 81, 84–85 (Minn.App. 2001) (citing *Lott v. Davidson*, 261 Minn. 130, 141–42, 109 N.W.2d 336, 344 (1961)). The court of appeals did not address the Confron-

tation Clause in *Pearson* and has not done so in any other case. Prior to *Pearson*, in *Glick v. Commissioner of Public Safety*, the court of appeals stated that section 634.15 "provides for prima facie authenticity of the report by requiring it to be issued by an authorized laboratory." 362 N.W.2d 15, 16 (Minn.App. 1985).

*remanded,* ─── U.S. ───, 126 S.Ct. 2979, ─── L.Ed.2d ─── (2006).

The state points to the waiver by wrongdoing doctrine in support of its argument that Confrontation Clause rights are subject to reasonable restrictions. The state contends that the requirement in section 634.15 for a defendant to request an analyst's testimony 10 days before trial is reasonable in light of the law's purpose "to allow the report into evidence routinely, thereby preventing unnecessary and costly court appearances or document production." *Glick v. Comm'r of Pub. Safety,* 362 N.W.2d 15, 16 (Minn.App.1985). The state argues that the statute fairly balances an accused person's confrontation right against the obvious realities that the contents of laboratory reports are rarely contested, the samples are typically subject to independent testing per Minn. R. Crim P. 9.01, subd. 1(4), and requiring BCA analysts to authenticate every lab report admitted is an unnecessary burden on the state's resources.

But, by our reading, *Crawford* removed the flexibility courts had to balance the state's interests, however legitimate, against the need for prior cross-examination and unavailability of the witness before testimonial evidence can be admitted. *Compare Craig,* 497 U.S. at 849, 110 S.Ct. 3157 (quoting *Mattox v. United States,* 156 U.S. 237, 243, 15 S.Ct. 337, 39 L.Ed. 409 (1895), for the proposition that confrontation rights "must occasionally give way to considerations of public policy and the necessities of the case"), *with Crawford,* 541

U.S. at 61, 124 S.Ct. 1354 (noting that confrontation is a procedural, not a substantive, requirement, because the Confrontation Clause "commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination").[6]

Even before *Crawford,* the Illinois Supreme Court concluded that the state's notice-and-demand statute

> impermissibly require[d] the defendant to take affirmative action to secure a right that he has already been constitutionally guaranteed or be deemed to have waived that right. We are unaware of any authority that permits the legislature to make a defendant's confrontation rights contingent upon action by the defendant * * *.

*People v. McClanahan,* 191 Ill.2d 127, 246 Ill.Dec. 97, 729 N.E.2d 470, 475–76 (2000). The court in *McClanahan* noted that if the right of the defendant to demand the appearance of the report preparer were enough,

> there would be no constitutional problem with allowing the State to introduce all of its evidence by affidavit as long as a defendant is allowed to bring the prosecution's witnesses into court himself. Trial by affidavit is the primary evil that the confrontation clause was designed to prevent.

246 Ill.Dec. 97, 729 N.E.2d at 477 (citation omitted).

We are attracted by the rationale discussed by the Ohio Court of Appeals in an

---

**6.** Nonetheless, at least two other state supreme courts have approved, since *Crawford,* their notice-and-demand statutes on reliability grounds. *State v. Cunningham,* 903 So.2d 1110 (La.2005); *City of Las Vegas v. Walsh,* 124 P.3d 203 (Nev.2005), *cert. denied,* ─── U.S. ───, 126 S.Ct. 1786, 164 L.Ed.2d 519 (2006). But both decisions rest in part on state case law. *See Cunningham,* 903 So.2d

at 1117, 1119 (relying on *State v. Powdrill,* 684 So.2d 350 (La.1996), and *State v. Hancock,* 317 Or. 5, 854 P.2d 926 (1993)); *Walsh,* 124 P.3d at 207–08, (relying on *DeRosa v. District Court,* 115 Nev. 225, 985 P.2d 157 (1999)). Because waiver of confrontation rights is a federal question, it is controlled by federal law. *Brookhart v. Janis,* 384 U.S. 1, 4, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966).

unpublished opinion, *State v. Smith*, 2006 WL 846342 (Ohio Ct.App.2006). There, the statute authorized the state to submit a lab report as evidence in a drug case if it served a copy on the defendant and the defendant failed to demand the testimony of the preparer within seven days of receiving the report. Smith did not demand the testimony, but at trial he objected to the admission of the report on confrontation grounds. The Ohio court noted that a defendant can waive his confrontation rights by failing to demand the testimony of the preparer. *Id.* at *5. Reasoning from the premise that a defendant may waive his confrontation rights by failing to object at trial, the court observed that the statute can require a defendant to assert his right at an earlier time. *Id.* The court also suggested that the action required of the defendant, to merely demand the testimony of the preparer, is not burdensome. *Id.* at *6. But the court ultimately concluded that "waiver of a confrontation right *before trial* must be made knowingly, intelligently, and voluntarily," *id.* at *6 (emphasis added), and that the state's notice to the defendant, under the statute, was inadequate to fully inform the defendant as to the consequences of waiver under the statute, *id.* at *7. The court said:

> Where the prosecutor fails to notify the defendant of the purpose for serving a copy of the report on the defendant, fails to indicate that it is being served pursuant to R.C. 2925.51, and fails to indicate that it is evidentiary material that will be entered into evidence without the defendant having the right to confront the technician unless he demands to do so, the defendant has not been properly put on notice that he is waiving his confrontation right as provided in the statute. Therefore, we cannot say that Smith knowingly, intelligently, and vol-

untarily waived his right to confrontation.

*Id.* at *7.

■ Similarly, we conclude that although there may be legitimate public policy reasons to advance the time to assert confrontation rights to a reasonable time before trial, such a shift cannot be constitutionally accomplished without adequate notice to the defendant that his failure to request the testimony of the analyst will result in the waiver of his confrontation rights, especially when the report is offered to prove an element of the offense with which the defendant is charged. Although we realize that this conclusion may give the defendant a strategic advantage that could potentially be abused—to reserve his objection for trial—the constitutional concerns presented by Caulfield's appeal warrant such a construction. *Cf. Davis v. Washington*, 547 U.S. ——, 126 S.Ct. at 2280, 165 L.Ed.2d 224 ("We may not * * * vitiate constitutional guarantees when they have the effect of allowing the guilty to go free.").

■ At a minimum, any statute purporting to admit testimonial reports without the testimony of the preparer must provide adequate notice to the defendant of the contents of the report and the likely consequences of his failure to request the testimony of the preparer. Otherwise, there is no reasonable basis to conclude that the defendant's failure to request the testimony constituted a knowing, intelligent, and voluntary waiver of his confrontation rights.

Because section 634.15 does not require adequate notice to the defendant, we conclude that it violates the Confrontation Clause. And because the record does not show that the state did otherwise provide adequate notice to Caulfield, we conclude that the admission of the BCA lab report against him was error.

### III.

In his concurrence in *Crawford,* the late Chief Justice William Rehnquist said that "the mistaken application of [the majority's] new rule by courts which guess wrong as to the scope of the rule is subject to harmless-error analysis." 541 U.S. at 76, 124 S.Ct. 1354 (Rehnquist, C.J., concurring). This court also recently subjected a Confrontation Clause violation under *Crawford* to the constitutional harmless error analysis. *State v. Courtney,* 696 N.W.2d 73, 79 (Minn.2005) (noting that "it is well settled that violations of the Confrontation Clause are subject to such analysis"). A constitutional error does not mandate reversal and a new trial if we determine that the error was harmless beyond a reasonable doubt. *State v. Juarez,* 572 N.W.2d 286, 291 (Minn.1997).

The court of appeals found that any error in admitting the BCA report was harmless beyond a reasonable doubt, noting that

> [t]he evidence established that the substance in Caulfield's possession tested positive for cocaine on two field tests, that it was packaged in small bags consistent with the sale of drugs, that Caulfield had been observed in short-term encounters consistent with drug transactions, and that Caulfield made an unrebutted statement to police that the substance was cocaine.

*Caulfield,* 2005 WL 1804353, at *6. In other words, the court found that the circumstantial evidence of guilt was "very strong." *Id.* Caulfield argues that the court of appeals erred by essentially using a sufficiency of the evidence analysis instead of determining that the verdict was surely unattributable to the error.

We have acknowledged that the constitutional harmless error analysis is not a matter of "analyz[ing] whether a jury would have convicted the defendant without the error, [but] rather * * * whether the error reasonably could have impacted upon the jury's decision." *Juarez,* 572 N.W.2d at 292. We have said:

> When determining whether a jury verdict was surely unattributable to an erroneous admission of evidence, the reviewing court considers the manner in which the evidence was presented, whether it was highly persuasive, whether it was used in closing argument, and whether it was effectively countered by the defendant. "[O]verwhelming evidence of guilt is a factor, often a very important one, in determining whether, beyond a reasonable doubt, the error has no impact on the verdict." But the court cannot focus on the evidence of guilt alone.

*State v. Al–Naseer,* 690 N.W.2d 744, 748 (Minn.2005) (quoting *Townsend v. State,* 646 N.W.2d 218, 224) (citations omitted).

With regard to the first *Al–Naseer* factor, the manner in which the evidence was presented, we note that Caulfield's bench trial was a very short affair. There is no chance that the report was lost among a plethora of other evidence. The BCA report was presented in the logical flow of Officer Pingel's testimony, to confirm that the substance seized from Caulfield was cocaine. We have said, "Where the evidence was aimed at having an impact on the verdict, we cannot say that the verdict was surely unattributable to the error." *State v. Litzau,* 650 N.W.2d 177, 184 (Minn.2002). All indications here are that the BCA report was presented in a way that was designed to secure the state's verdict.

As to the second *Al–Naseer* factor, lab testing identifying a substance as cocaine generally would have to be characterized as highly persuasive evidence. But the question of whether it was required or was

merely cumulative of other evidence is somewhat debatable. The court of appeals rested its harmless error determination, in part, on *State v. Olhausen,* 681 N.W.2d 21, 28 (Minn.2004), stating that the identity of a substance may be proven by circumstantial evidence and officer testimony without scientific testing. *Caulfield,* 2005 WL 1804353, at *5.[7] Arguably the BCA report could be seen as cumulative, given the police officers' testimony as to the results of their field tests and Caulfield's admission. But the lab report has the appearance of being conclusive proof, whereas the other evidence could be subject to challenge. Caulfield's counsel argued, in opposing admission of the report, that the report "basically provides, in my view, the conclusive proof that this product that Mr. Caulfield was possessing was, in fact, a controlled substance."

As to the third *Al–Naseer* factor, the state did reference the report in closing argument, stating that the report was "clear on what the contents of the packages [seized from Caulfield] were" and showed that there was "no reasonable doubt about what was in the defendant's pocket." The state had also mentioned the report in its opening statement. Measured by the first three of the *Al–Naseer* factors, it cannot be said that the verdict was surely unattributable to the erroneous admission of the BCA report.[8]

We are left with the fourth *Al–Naseer* factor, whether the evidence was effectively countered by the defendant, and the fifth factor, whether the other evidence of guilt was overwhelming. These factors are difficult to apply under the present facts.

Ordinarily, the ability of the defendant to effectively counter the questioned evidence would favor the state because if the evidence has been effectively countered, the verdict is unlikely to be attributed to it. But cases where the defendant does not attempt to counter the evidence on the merits, and only objects to its admissibility, are less clear. Should this weigh in favor of the defendant because the impact of the unrebutted evidence is greater? Or should this weigh in favor of the state because the defendant should not be allowed to complain about the evidence (i.e., the conclusions in the report) if he neither criticizes the methodology used nor offers any alternative conclusions? Because our inquiry is to estimate the impact that the report may have had on the decision of guilt, it would seem that the better answer is that unrebutted evidence has greater impact. This answer is also more consistent with the general proposition that the state has the burden of proof and the defendant need not offer any proof. Thus, this factor weighs in favor of finding the error to be prejudicial.

This brings us to the "overwhelming evidence" factor. We must acknowledge that our decisions have not been completely clear or consistent on the question of

---

7. But the defendant in *Olhausen* had destroyed the evidence, while the substance seized from Caulfield was available for testing. 681 N.W.2d at 28.

8. We acknowledge that evidentiary errors may be less prejudicial in a bench trial than in a jury trial. *See Sandberg v. Comm'r of Revenue,* 383 N.W.2d 277, 282 (Minn.1986) (admission of improper evidence less likely to require new trial where case was tried to court); *Irwin v. State,* 400 N.W.2d 783, 786 (Minn.App.1987) (affirming postconviction court's analysis that effect of *Spreigl* evidence was less prejudicial because it was admitted at bench trial), *rev. denied* (Minn. Mar. 25, 1987). But the trial judge here, while finding Caulfield's *Crawford* argument "interesting," overruled his objection and admitted the evidence. The obvious implication is that the judge found the evidence relevant and probative.

whether overwhelming evidence of guilt can be used to trump the other factors in determining whether an error reasonably could have impacted the decision. As noted by one commentator:

> The nature of the issue lends itself to an *ad hoc* determination in each case based on the particular facts involved. Even the legal standard appears to vary depending on the nature of the case and the nature of the error.

11 Peter N. Thompson, *Minnesota Practice: Evidence* § 103.02 (3d ed.2001).

Prior to *Al–Naseer*, our case law took a few turns. In *State v. Townsend*, we said that harmless beyond a reasonable doubt means "that the weight of all the other evidence is such that it 'justifies the verdict regardless of the erroneous admission * * *.' " 546 N.W.2d 292, 297 (Minn.1996) (quoting *State v. Ford*, 539 N.W.2d 214, 227 (Minn.1995)). But in Juarez, we criticized *Townsend* as an example of a case where we "inadvertently misstated the significance of the strength of the evidence of guilt in harmless error analysis." 572 N.W.2d 286, 291 n. 6 (Minn.1997). We went on in *Juarez* to say:

> [T]hat the evidence was sufficient, or even overwhelming, does not mean that the error was necessarily harmless. Harmless error analysis is better labelled as 'harmless error impact analysis' because it is the impact of that error that the appellate court must consider. The overwhelming evidence of guilt is a factor, often a very important one, in determining whether, beyond a reasonable doubt, the error has no impact on the verdict.

*Id.* at 291. In *Juarez*, the error was the admission of a defendant's statement to police requesting counsel, which could be interpreted by the jury as a badge of guilt. *Id.* at 290–91. We held that the erroneously admitted evidence reasonably could not have impacted the verdict, but we did not discuss the factors of how the evidence was presented or whether it was used in the state's closing argument. *Id.* at 292–93. Without saying so, we apparently concluded that the erroneously admitted evidence was not highly persuasive because it was, at best, indirect and circumstantial.

We articulated the factors that govern a harmless-beyond-a-reasonable-doubt analysis in *State v. Ferguson*, 581 N.W.2d 824, 833 (Minn.1998) (citing *Maurer v. Department of Corrections*, 32 F.3d 1286, 1289 (8th Cir.1994)). The challenged evidence was the victim's dying declaration: "It was the Bloods." *Id.* at 832. We observed that (1) this evidence was minimized when it was presented-the state did not argue that the victim actually saw the shooter and the officer who heard the statement admitted that the victim may have been guessing; (2) during its closing argument, the state agreed that no one saw the shooter; and (3) the court gave a cautionary instruction on the use of witness identification evidence. Based on these factors, but not the strength of the evidence of guilt, we concluded that the verdict was surely unattributable to the dying declaration. *Id.* at 833.

Next, we reconsidered *Townsend* in response to his postconviction petition. *Townsend v. State*, 646 N.W.2d 218 (Minn. 2002). We agreed to apply the proper standard for harmless error beyond a reasonable doubt, in light of the misstatement of the significance of the strength of the evidence of guilt in our harmless error analysis on direct review. *Id.* at 222. The challenged evidence was the excessive detailing of an attempted murder committed by the defendant as part of the same episode as the charged murder (we held that some of the evidence was admissible, but that the evidence allowed at trial was too extensive, being more prejudicial than pro-

bative). *Id.* at 223. We did determine that the other evidence of guilt was strong and that this could be considered as one factor. *Id.* at 224. But we also concluded that (1) the evidence was presented in a manner whereby the jury would not have focused unduly on it; (2) the evidence was not the focus of any single witness's testimony; (3) the evidence was not disputed; and (4) the prosecutor did not dwell on it in either the opening statement or closing argument.[9] *Id.* at 223–24.

This brings us to *Al–Naseer*, where we detailed the factors for a constitutional harmless error analysis and emphasized that the strength of the evidence of guilt is one factor but should not be the focus of the analysis. 690 N.W.2d at 748. The challenged evidence was the videotaped interview of defendant by police, held to be inadmissible because of the failure to obtain the defendant's waiver of his right to remain silent. *Id.* at 750. The videotape did not contain any admissions of guilt and the state only used it to challenge the defendant's credibility. *Id.* at 748. We held that the error was not harmless, observing that (1) the state used it in the opening statement; (2) several witnesses commented on it during their examination; (3) the defendant was cross-examined about it; and (4) the state referred to it in closing argument. *Id.* at 749–50. We did not weigh the strength of the evidence against these factors.

To recap, in applying the harmless-error-beyond-a-reasonable-doubt standard, we have found the error to be harmless only where several factors weigh in that direction: the evidence was presented in a manner that did not give it significant focus; the state did not dwell on it in

opening and closing statements or in examining witnesses; the evidence was not highly persuasive but was circumstantial. In those cases, the harmless error conclusion has been reinforced by the strength of the evidence of guilt. But we do not have a single case applying the constitutional harmless error analysis where we have held that the strength of the evidence of guilt controls even though the other factors weigh in favor of prejudicial error. Stated another way, we do not have a single case where we have held that the admission of direct and persuasive evidence on an element of the crime is harmless because other less direct and less persuasive or largely circumstantial evidence is strong.

Here, the other evidence relied on by the state is the admission of Caulfield to police and the two field tests of the substance. Although these are clearly sufficient to support the finding of guilt, they each are of lesser persuasive quality than the lab report, which was relied on by the state to be the definitive evidence of the identification of the substance as cocaine. We conclude that the erroneous admission of the report was not harmless beyond a reasonable doubt.

Reversed and remanded for new trial.

Dissenting, ANDERSON, G. BARRY, J. ANDERSON, RUSSELL A., C. J., and GILDEA, J.

ANDERSON, G. BARRY, J. (dissenting).

I respectfully dissent. While I agree with the majority that the Bureau of Criminal Apprehension (BCA) lab report is testimonial, I believe that Caulfield's failure

---

**9.** In retrospect, it is curious that we used the harmless-error-beyond-a-reasonable-doubt standard in *Townsend* because no constitutional error was claimed. In any event, *Townsend* does stand as authority

to request the BCA analyst's testimony constitutes a valid waiver of his Sixth Amendment right to confront that analyst in court. Minnesota Statutes § 634.15 (2004) adequately guards a defendant's constitutional right to confrontation. The majority argues that a defendant must receive notice of the likely consequences of failing to request the preparer's testimony before confrontation rights may be waived.[1] This additional safeguard, however desirable, is not required by either the statute or the United States Constitution.

I begin with the observation that this question has had relatively little attention, and there are few decisions on point, with none from our court. Nonetheless, the United States Supreme Court has provided some guidance with respect to this issue.

"[T]he most basic rights of criminal defendants are ... subject to waiver." *New York v. Hill*, 528 U.S. 110, 114, 120 S.Ct. 659, 145 L.Ed.2d 560 (2000) (quoting *Peretz v. United States*, 501 U.S. 923, 936, 111 S.Ct. 2661, 115 L.Ed.2d 808 (1991)). "What suffices for waiver depends on the nature of the right at issue." *Id.* In order for a defendant to waive his right to confront witnesses against him, there must be "an intentional relinquishment or abandonment of a known right or privilege."

*Barber v. Page*, 390 U.S. 719, 725, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968).

The issue, then, is whether Caulfield's failure to request the BCA analyst's testimony under section 634.15 can be characterized as an "intentional relinquishment" of a "known right." Under Supreme Court precedent, I would answer that question in the affirmative.

Caulfield's failure to request the BCA analyst's testimony can be construed as an "intentional relinquishment" of his right to confrontation. The Supreme Court has held that a waiver of a constitutional right need not be explicit. *See Illinois v. Allen*, 397 U.S. 337, 345–46, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970).[2] There is no constitutional requirement, then, that every waiver of a constitutional right must be affirmatively conceded by the defendant on the record. Since we presume that members of society are acquainted with the law, *State v. Jacobson*, 697 N.W.2d 610, 615 (2005), when defendants choose not to exercise their right to confront the BCA analyst under section 634.15, I believe that right is relinquished.

The Supreme Court has also held that a constitutional right may not be waived unless it is a "known right or privilege." *Barber*, 390 U.S. at 725, 88 S.Ct. 1318. But the Court has not required defendants to have complete knowledge of their rights

for the proper application of the constitutional harmless error standard.

1. The majority also states that defendants must be advised of the actual contents of a BCA report in order for waiver to be valid. Because the appellant has not argued that he did not receive a copy of the report, this requirement is not before us and I therefore address only the notice issue in this dissent.

2. The Supreme Court has found nonexplicit waivers of confrontation rights in several contexts. *See, e.g., Taylor v. United States*, 414 U.S. 17, 94 S.Ct. 194, 38 L.Ed.2d 174 (1973) (finding waiver where defendant voluntarily absented himself from courtroom); *Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970) (finding waiver where defendant's conduct caused his expulsion from courtroom); *Reynolds v. United States*, 98 U.S. 145, 25 L.Ed. 244 (1878) (finding waiver where defendant procured witness's unavailability). While these examples involve defendant misconduct and are not directly comparable with the facts before us, section 634.15 provides a mechanism through which the defendant may choose or not choose to confront the witness; this is greater protection than that granted to defendants in misconduct circumstances, where the defendants were almost certainly not considering their trial rights.

in order to effectuate a valid waiver. For example, in *Taylor v. United States*, the defendant failed to return to his trial after a lunch recess. 414 U.S. at 17, 94 S.Ct. 194. The district court continued with the defendant's trial, despite his inability to testify and confront witnesses against him. The Supreme Court held that the defendant voluntarily waived his rights, noting that, "[i]t is wholly incredible to suggest that petitioner * * * entertained any doubts about his right to be present at every stage of his trial." *Id.* at 20, 94 S.Ct. 194. The Court did not require that the defendant demonstrate knowledge of, let alone affirmatively state, the precise constitutional right he was waiving.[3]

Similar reasoning can be applied to Minn.Stat. § 634.15. The statute clearly states that the results of a laboratory analysis authorized by the BCA are admissible into evidence. Minn.Stat. § 634.15, subd. 1(a) (2004). The statute provides that the defendant may cross-examine the analyst at trial "by notifying the prosecuting attorney at least ten days before the trial" of the defendant's intention. *Id.* subd. 2(a). The clear and necessary consequence of failing to give the statutory notice to the prosecution is that the analyst will not be available for cross-examination. It is "wholly incredible" that Caulfield "entertained any doubts" that the analyst would not be a prosecution witness at trial, after Caulfield failed to give notice under the statute. Minnesota Statutes § 634.15, as written, provides a defendant with adequate notice under the Constitution to vol-

untarily relinquish his right to confront the analyst.

As a matter of policy and court rule, I would not disagree that a more detailed waiver of the confrontation right is desirable, and there are procedures available that may lead to the adoption of just such a rule. But I conclude that by failing to request the analyst's testimony as provided by Minn.Stat. § 634.15, Caulfield waived his constitutional right to confront the analyst, and, therefore his conviction should be upheld.

ANDERSON, RUSSELL A., Chief Justice (dissenting).

I join in the dissent of Justice G. Barry Anderson.

GILDEA, Justice (dissenting).

I join in the dissent of Justice G. Barry Anderson.

---

**3.** While the defendant's misconduct in *Taylor* makes the case distinguishable, the broader proposition is that waivers may be effectuated in many different ways, depending on the right and the context in which that right arises. I do not suggest, for example, that in the guilty plea context, a silent record might be sufficient to waive all trial rights. *See*

*Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). A BCA analyst's testimony, while important, arises in an evidentiary context, which lacks the same finality as a guilty plea. Section 634.15 adequately safeguards defendants' rights in those circumstances.