{¶ 48} I concur with the majority's findings and analysis with respect to assignments of error I, III and IV. I concur in judgment only with respect to assignment of error II. Finally, I respectfully dissent from the majority with respect to assignment of error V.
 {¶ 49} Cosme's second assigned error squarely raises aCrawford challenge regarding a DNA analyst testifying about a test result when that specific analyst did *Page 16 
not perform the actual test. Although the DNA reports fall under the business records exception to the hearsay rule pursuant to Evid.R. 803(6), in light of Crawford v. Washington (2004), 541 U.S. 36, I would find that the DNA reports are nonetheless testimonial, and consequently subject to the Sixth Amendment right to confrontation.[2]
 {¶ 50} In Crawford, the United States Supreme Court held the following: "Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the United States Constitution actually prescribes: confrontation."Crawford, 541 U.S. at 68-69. Accordingly, the Court held that where testimonial evidence is at issue, the Constitution requires unavailability and a prior opportunity for cross-examination. Id. at 68.
 {¶ 51} A recent decision by the Ohio Supreme Court provided a framework for Crawford discussions when the court ruled that autopsy reports were nontestimonial and were admissible under the business records exception pursuant to Evid.R. 803(6). State v. Craig,110 Ohio St.3d 306, 2006-Ohio-4571. The Ohio Supreme *Page 17 
Court also noted that autopsy reports were public records under R.C.313.10. In Craig, the court held that a non-examining coroner's expert testimony about autopsy findings, test results, and the witness's opinion about the cause of death do not violate a defendant's confrontation rights. Id. at 322.
 {¶ 52} Nevertheless, the Ohio Supreme Court noted that "Some jurisdictions have resolved the Crawford issue [as it pertains to autopsy reports] by distinguishing between objective factual findings, which are considered nontestimonial, and opinions and conclusions, which are considered testimonial. See Lackey, 280 Kan. at 213-214,120 P.3d 332; Rollins, 161 Md.App. at 82, 866 A.2d 926." Id. at 321.
 {¶ 53} In particular, the Ohio Supreme Court referenced Rollins v.State (2005), 161 Md.App. 34, 81, 866 A.2d 926. In Rollins, a medical examiner who did not perform the autopsy testified about the results of the autopsy. The trial judge redacted those portions of the report that constituted opinions or conclusions, including reference to the cause and manner of death. On appeal, the court found that the defendant's right to confrontation was not violated because the remaining findings in the autopsy report did not constitute testimonial evidence, as contemplated by Crawford. Id. In so holding, the Rollins court stated as follows:
 "[T]he findings in an autopsy report of the physical condition of a decedent, which are routine, descriptive and not analytical, which are objectively ascertained and generally reliable and enjoy a generic indicium of reliability, may be received into evidence without the testimony of the examiner. Where, however, contested conclusions or opinions in an autopsy report are central to the determination of corpus delecti or criminal agency and are offered into evidence, they serve the *Page 18 
same function as testimony and trigger the Sixth Amendment right of confrontation." Id.
 {¶ 54} In a case similar case to this case, State v. Crager,164 Ohio App.3d 816, 2005-Ohio-6868, the Third District Court of Appeals in applying Crawford held that the DNA test results in that case were testimonial.[3] The Crager court noted that although the DNA lab report fell within the general parameters of the business records exception under Evid.R. 803(6), lab reports and DNA reports prepared by the Ohio Bureau of Criminal Identification and Investigation (a.k.a. BCI), are prepared wholly in anticipation of litigation. Because the reports were prepared solely in anticipation of prosecution, theCrager court found them to be testimonial. Since Crager was not given a prior opportunity to cross-examine the witness about the findings of the report, the court found the defendant's right to confrontation under theSixth Amendment was violated. The Crager court noted that the fundamental inquiry is whether the statement is testimonial or non-testimonial and the determination must be made on a case-by-case basis.
 {¶ 55} Likewise, the Third District Court of Appeals in State v.Smith, Allen App. No. 1-05-39, 2006-Ohio-1661, held that while a defendant may waive the right *Page 19 
to confrontation, the right itself could not be undermined by the application of the business record exception to a laboratory report containing a test result.
 {¶ 56} Therefore, I believe the threshold question in this case is whether the DNA test results, contained in State's exhibit 19 and admitted through Ms. Word, were testimonial. As previously stated, I, like the Third District Court of Appeals, believe that DNA reports in this case are testimonial, because, unlike an autopsy report, these DNA test results were prepared in anticipation of prosecution. Nevertheless, I would find that, in limited circumstances, as outlined below, a DNA analyst may testify about test results when that analyst did not perform every single procedure involved in the DNA testing process.
 {¶ 57} In this instance, testimony was offered by Ms. Word, a former Cellmark laboratory analyst, regarding the results of the DNA samples submitted to Cellmark through BCI. Ms. Word testified about the procedure and protocol of the Cellmark laboratory and the testing process used to obtain the results. Ms. Word acknowledged during her testimony that at least three other analysts were involved in the testing process, but, unlike the analyst in Crager, Ms. Word was present during the testing procedures and reviewed the report's findings and subsequently signed off on them.
 {¶ 58} Clearly, the BCI forwarded the DNA samples to Cellmark in anticipation of prosecution. The resulting report containing the DNA test results implicating Cosme was testimonial and therefore subject to the Confrontation Clause. Cosme *Page 20 
had the right to confront an analyst who either performed the actual test(s) or was directly involved in the testing process.
 {¶ 59} In today's world, modern scientific testing and laboratory protocol often involve a variety of procedures that are rarely completed by just one person. In this case alone, there were no fewer than three other analysts, besides Word, who were directly involved the testing process. It is unrealistic, even with Crawford's obvious demands, to expect that every individual at every level who touches or comes in contact with a DNA specimen will be required to testify to avoid aSixth Amendment violation. Nevertheless, who must testify and to what extent must be determined on a case-by-case basis to satisfy Crawford.
 {¶ 60} In my view, Word's testimony regarding the DNA results in this case did not violate Crawford because Word was present during the testing process and was able to testify about the testing procedures as well as the Cellmark laboratory protocol for DNA tests. Further, she reviewed the specific results at the time they were made and personally initialed the report supporting the findings. The factual distinction between this case and Crager could not be clearer. When a DNA analyst is present during the DNA testing procedures, can testify about the laboratory protocol and how the DNA test results are achieved, reviews the DNA test results at the time they are obtained, and initials the final report containing the DNA results, no Sixth Amendment violation occurs when that analyst appears to testify. A DNA analyst offering DNA test results at trial is not required to personally perform every *Page 21 
specific aspect of each DNA test in question, provided the analyst was present during the critical stages of the test, is familiar with the process and the laboratory protocol involved, reviews the results in proximity to the test, and either initials or signs the final report outlining the results. In such instances the Sixth Amendment right of confrontation under Crawford is satisfied. Any claims about irregularities in such instances go to the weight of the testimony and not to its admissibility.
 {¶ 61} With respect to assignment of error V, I respectfully dissent. Cosme raises an ex post facto argument based on Foster. I would overrule this assignment of error because in Foster the Supreme Court stated the following: "While the defendants may argue for reductions in their sentences, nothing prevents the state from seeking greater penalties."State v. Foster, 109 Ohio St.3d 1, 31, 2006-Ohio-856, citing UnitedStates v. DiFrancesco (1980), 449 U.S. 117, 134-136, 101 S.Ct. 426,66 L.Ed.2d 328.
 {¶ 62} Further, this district has addressed ex post facto claims in light of Foster and rejected them in State v. Mallette, Cuyahoga App. No. 87984, 2007-Ohio-715. Likewise, the Third District Court of Appeals came to a similar conclusion in State v. McGhee, Shelby App. No. 17-06-05, 2006-Ohio-5162. Unless and until the Ohio Supreme Court or a federal court revisits Foster, cases sentenced and reviewed after its release are bound by its dictates.
 {¶ 63} Here, Cosme was sentenced one day after the release ofFoster. While the majority opinion acknowledges this, it nonetheless holds as follows: "Because *Page 22 
appellant's sentence was based on an unconstitutional statute, it is deemed void." Cosme was not sentenced under an unconstitutional statute. The Ohio Supreme Court excised the offending portions of the former statute. Thus, Foster has no application to the case under review. OnceFoster was released, any assertions about the unconstitutional aspects of the original Senate Bill 2 sentencing provisions, for our purposes, have been cleansed by the Supreme Court's decision.
 {¶ 64} As a result, I would affirm Cosme's conviction and sentence.
[2] Cosme's challenge brings into question a prior decision from this district in which the defendant asserted that his constitutional right to confrontation had been violated when a DNA analyst, who testified at his trial, had not actually conducted the DNA testing. At that time, this court held that the defendant had not been denied his right to confrontation, because the DNA reports were properly admitted under the business records exception to the hearsay rule, pursuant to Evid.R. 803(6). See State v. Fontenette (Sept. 19, 1991), Cuyahoga App. No. 59014. Because the trial court in the instant case decided the admissibility of the DNA test results based on the testimony of the analyst and not under the business records exception, I need not address the viability of Fontenette.
[3] The Ohio Supreme Court certified a conflict betweenCrager and State v. Cook, Wood App. No. WD-04-029, 2005-Ohio-155. The court certified the following question: "Are records of scientific tests, conducted by a government agency at the request of the State for the specific purpose of being used as evidence in the criminal prosecution of a specific individual, `testimonial' under Crawford v.Washington (2004), 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed. 2d 177?"State v. Crager, 109 Ohio St.3d 1421, 2006-Ohio-6868. *Page 1