OPINION
{¶ 1} Defendant-appellant, Jesse Brown, appeals his conviction in the Butler County Court of Common Pleas for aggravated robbery with a firearm specification, having weapons while under disability, possession of cocaine, possession of marihuana, and illegal use or possession of drug paraphernalia. We affirm appellant's conviction.
 {¶ 2} On September 16, 2005, at approximately 6:40 a.m., Christopher Root, then 17 and an 11th grader at Hamilton High School, was waiting for his school bus approximately one *Page 2 
block away from his home, at the corner of South Front and Walnut Streets in Hamilton, Ohio. While Root was sitting alone, away from the other students, appellant approached him. After initially questioning Root about the bus stop, appellant pulled out a gun with his right hand, shoved it into Root's right side, and demanded money from Root by saying, "Give me your wallet."
 {¶ 3} Root originally told appellant that he did not have a wallet. After appellant repeatedly demanded that Root give him the wallet, Root took the wallet from his pocket and begged appellant not to take the $3 in the wallet, claiming it was for his brother's medicine. Appellant then gave the wallet back to Root, noticed the watch Root was wearing, and told Root to give him the watch. When Root told him, "no," appellant "cocked" the gun, pulling its slide back with his left hand to chamber a round of ammunition, and again shoved the gun into Root's ribs. Despite Root's protests that it was his deceased grandfather's, appellant took the watch. Before turning to his left and running around the corner toward Chestnut and Second Streets, appellant threatened that he would shoot Root in the face if he turned in appellant's direction.
 {¶ 4} Fearful that appellant would shoot him if he turned the corner, Root waited for a few seconds and then ran straight home. When he got home, Root told his father, who then called the police to report the crime.
 {¶ 5} Hamilton Police Officer Michael Coleman responded to Root's home to take the report of the armed robbery and get the victim's description of the man who robbed him. Root described the assailant as a black male with braided hair, wearing a black t-shirt with some type of design or writing on it and carrying a small silver handgun. Root also told the officer that the assailant demanded money from him, put the handgun in his side, chambered a round, took his watch, and ran from the scene. Officer Coleman then broadcast that description over the radio and remained with the victim. *Page 3 
 {¶ 6} Police Officers Steven McFall and Patrick Erb, in a two-man unit, responded immediately to that broadcast by driving their police cruiser to the area, looking for the robber as described over the air by Officer Coleman. As they were driving, the officers saw appellant walking southbound near the corner of Chestnut and Second Streets and immediately noticed that he matched the description. When appellant saw them, he reacted by running off between nearby houses. Officer Erb immediately got out of the police cruiser and gave chase on foot through yards and alleys and behind Singletary's Market. Shortly thereafter, he apprehended appellant at the intersection of Walnut and Second Streets. After taking appellant into custody, the officer removed an "oversized pill capsule," which contained a scale and cocaine residue, from appellant's hands and a baggie of marihuana from his pocket. At Officer Erb's direction, Officer McFall took appellant in the police cruiser to the street near Root's home. There, Root made a positive identification of appellant as the man who robbed him.
 {¶ 7} Officer Erb stayed at the scene of the arrest and retraced the area of the pursuit to look for contraband. Another officer who had responded to the call discovered a handgun alongside the path of appellant's flight. Officer Erb picked up the handgun, a silver .25 semiautomatic pistol with one round of ammunition in its chamber and two rounds in its magazine, which matched Root's description. In addition, Officer Erb found two "rocks" of crack cocaine in one baggie and six Vicodin (hydrocodone with acetaminophen) pills in another.
 {¶ 8} Appellant was later indicted on six counts arising from the events on September 16, 2005: (1) aggravated robbery with a firearm specification, a felony of the first degree; (2) having weapons under a disability, a felony of the third degree; (3) possession of cocaine, a felony of the fifth degree; (4) possession of drugs, a minor misdemeanor; and (5) illegal use or possession of drug paraphernalia, a misdemeanor of the fourth degree. On December 7, *Page 4 
2005, appellant filed a motion to suppress identification testimony and a motion to suppress evidence seized incident to his arrest. The trial court conducted a suppression hearing on December 21, 2005, and overruled both motions.
 {¶ 9} The case proceeded to a jury trial on July 17-18, 2006, where the jury found appellant guilty of Counts One (with the firearm specification), Two, Three, Five, and Six, but found appellant not guilty as to Count Four. The trial court sentenced appellant to a stated prison term totaling thirteen years and gave him credit for time served. The trial court also suspended appellant's driver's license for five years, imposed fines of $10,150 and declared that the firearm would be forfeited. Appellant timely appealed, asserting the following assignments of error:
 {¶ 10} Assignment of Error No. 1:
 {¶ 11} "THE TRIAL COURT VIOLATED APPELLANT'S DUE PROCESS RIGHTS BY FAILING TO SUPPRESS IDENTIFICATION EVIDENCE OBTAINED DURING THE SHOW-UP."
 {¶ 12} Appellate review of a motion to suppress presents a mixed question of law and fact. State v. Burnside, 100 Ohio St.3d 152,2003-Ohio-5372, at ¶ 8. When considering a motion to suppress, the trial court, as the trier of fact, is in the best position to resolve factual questions and evaluate the credibility of witnesses. State v. Mills
(1992), 62 Ohio St.3d 357, 366. Consequently, we must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Fanning (1982), 1 Ohio St.3d 19. Relying on the trial court's factual findings, we then must review de novo whether the trial court has applied the appropriate legal standard. State v. McNamara
(1997), 124 Ohio App.3d 706.
 {¶ 13} Appellant argues that "a robbery victim's identification of a defendant at a show-up must be suppressed by a trial court as inherently suggestive, untrustworthy, and unreliable, when the victim fails to describe an essential characteristic of his identification." Specifically, *Page 5 
appellant asserts that the trial court erred when it overruled his motion to suppress evidence regarding Root's identification of appellant, arguing that it was unreliable because in his original and subsequent descriptions of the assailant — a black male with braids, wearing a black t-shirt with some sort of writing on it and carrying a small silver handgun — Root omitted one particular detail: the image of Darth Vader, a "Star Wars" movie character, on appellant's black t-shirt.
 {¶ 14} To warrant suppression of identification testimony, appellant bears the burden of establishing that the identification procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Neil v. Biggers (1972),409 U.S. 188, 198, 93 S.Ct. 375. Generally, a confrontation is unnecessarily or unduly suggestive when the witness has been shown only one subject. Manson v. Brathwaite (1977), 432 U.S. 98, 116,97 S.Ct. 2243. The admission of evidence of a showup without more, however, does not violate due process, so long as the identification possesses sufficient aspects of reliability. Manson at 115; State v. Lamb, Butler App. Nos. CA2002-07-171 and CA2002-08-192, 2003-Ohio-3870. Furthermore, under certain circumstances, the viewing of a subject in a one-man showup near the time of the alleged act tends to insure accuracy.State v. Madison (1980), 64 Ohio St.2d 322, 332.
 {¶ 15} When determining the reliability of a witness' identification, the court examines whether the identification was unreliable under the totality of the circumstances, considering the following factors relevant to this inquiry: (1) the witness' opportunity to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description; (4) the level of the witness' certainty at the confrontation; and (5) the length of time between the crime and the confrontation. Manson at 114, citingBiggers at 198-199.
 {¶ 16} At the suppression hearing, Hamilton Police Officers Michael Coleman and Patrick Erb testified that Root reported the robbery at approximately 6:40 a.m. on September *Page 6 
16, 2005, which occurred at Front Street and Walnut Drive in Hamilton. The teenager reported that he was robbed by a black male with braided hair, wearing a black t-shirt and also reported that the perpetrator shoved a handgun in his side and chambered a round of ammunition.
 {¶ 17} After the call went out to the patrol officers, the responding officers saw appellant on the west sidewalk on South Second Street, only one and a half blocks from the robbery scene. The officers observed that appellant matched the description given by the victim. Officer Erb testified that when appellant spotted the cruiser, he took off running. After Officer Erb gave chase on foot, and Officer McFall gave chase in the cruiser, appellant was arrested at the corner of Second and Walnut Streets.
 {¶ 18} Officer McFall then took appellant in his police cruiser to Root's home, where Root identified him as the person who robbed him. Officer Coleman testified that he was present when Officer McFall arrived at Root's home with appellant. He also testified that Root identified appellant as the robber within ten to fifteen minutes after the robbery occurred and that Root was "very sure" that appellant was the person who robbed him. Officer Coleman also confirmed that no one said or did anything to suggest to Root that appellant was the person to rob him.
 {¶ 19} At the conclusion of the hearing, the trial court considered the five factors in Manson and found that Root's identification of appellant was not unduly suggestive.
 {¶ 20} Although appellant cites to the foregoing five-factor analysis, he specifically attacks the accuracy of Root's description of appellant, arguing that "the image of Darth Vader is not a fact a person would forget." Appellant urges the court to believe that because Darth Vader "is a universal archetype" of evil, anyone who saw an image of Darth Vader would unfailingly recall it under any circumstance.
 {¶ 21} Despite appellant's assertions, we find that the totality of the circumstances *Page 7 
prove that Root's identification of appellant possessed sufficient indicia of reliability. Root had the opportunity to view the perpetrator at close range, as appellant was close enough to shove a small handgun into Root's ribs. Being the victim of the robbery, he was more than a mere casual observer. See Biggers at 200. Root's initial description of the perpetrator matched that of appellant, who police found only one and a half blocks from the scene of the robbery within minutes, and Root demonstrated certainty at the showup, by stating that he was very sure appellant was the perpetrator. In addition, the victim's identification of appellant occurred within five to fifteen minutes of the robbery. Therefore, Root's identification of appellant was not so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. See State v. Richards, Hamilton App. No. C-050938, 2007-Ohio-172, at ¶ 17 (finding that identification was reliable when witness provided police with immediate description, the perpetrators were caught three and a half blocks away, and witness identified perpetrators within 30 minutes of the robbery); State v.Isaac, Montgomery App. No. 20662, 2005-Ohio-3733 (holding that a one-man showup, conducted with defendant in the back of a police cruiser, did not give rise to substantial likelihood of misidentification where showup was conducted shortly after incident, in which victim was robbed at gunpoint, and victim's identification was certain); State v.Sawyer (May 17, 1999), Butler App. No. CA98-07-140 (finding the identification of intruder at the scene of his arrest was not impermissibly suggestive where victim was one-hundred percent sure of intruder's identification and identified intruder within minutes of the incident). Accordingly, we overrule appellant's first assignment of error.
 {¶ 22} Assignment of Error No. 2:
 {¶ 23} "THE TRIAL COURT VIOLATED APPELANTS CONSTITUATIONAL DUE PROCESS RIGHT TO CONFRONTATION BY ADMITTING THE LABORABTORY TEST RESULTS INTO EVIDENCE." *Page 8 
 {¶ 24} Appellant argues that the trial court violated his right of confrontation under the Sixth Amendment of the United States Constitution and Article I, section 10 of the Ohio Constitution when it admitted a laboratory report into evidence over his objection at trial. The lab report in question was obtained following appellant's arrest. It contained the analysis of a lab technician who determined that the items found on appellant and in his path of flight were illegal controlled substances.
 {¶ 25} We note that Appellant failed to object at trial on constitutional grounds to the introduction of the laboratory reports without the testimony of the analyst who prepared the report. At trial, appellant's attorney objected to the admittance of the report on the basis that "a specific notice must be filed in order to [introduce the laboratory report without the testimony of the analyst who completed the report] and that the notice which appears on the information provided in discovery [was] insufficient." He claimed that he was only provided a photocopy of the notice and it was not a formal statement from the prosecutor. In response, the prosecutor argued that the statement provided to appellant comported with the notice requirements of the applicable statutes, R.C. 2925.51 and Crim.R. 12(E)(1), and that appellant had notice of the state's intention to admit the report without the live testimony for several months. The trial court then asked whether defense counsel had a response, to which he replied that he did not. The trial court then overruled the objection, stating that "the state's procedure utilized fully complies with [R.C. 2925.51]" and permitted the report to be introduced into evidence. The trial court then made certain for the record that defense counsel had received a copy of the discovery response, which included the laboratory report and sufficient notice. Defense counsel responded by saying, "Your Honor, I don't recall when I received it, but there is no doubt I've had it for plenty of time in excess of six months, no doubt."
 {¶ 26} Later, when the lab report containing the drug analysis and affidavit of the lab *Page 9 
technician was introduced in the course of the trial, defense counsel objected to Officer Erb giving testimony relating to the items contained in the lab report, and argued to the court that "if the report speaks for itself and they are not going to bring in testimony about it, I don't think they get to testify as to what it contains." The trial court sustained that objection and admitted the lab report into evidence.
 {¶ 27} An appellate court need not consider an error not called to the trial court's attention at a time when the error could have been avoided or corrected by that court. State v. Williams (1977), 51 Ohio St.2d 112,117. "Accordingly, a claim of error in such a situation is usually deemed to be waived absent plain error." State v. Hill (2001),92 Ohio St.3d 191, 196, citing Crim.R. 52(B). Therefore, because it is clear from the record that Appellant did not object at trial to the admittance of the lab report on constitutional grounds, we review his constitutional challenge for plain error only
 {¶ 28} Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The rule places three limitations on an appellate court's decision to correct an error, despite the absence of a timely objection at trial: (1) there must be an error; (2) the error must be plain, or an "obvious defect in the trial proceedings;" and (3) the error must have affected the outcome of the trial. State v.Barnes, 94 Ohio St.3d 21, 27, 2002-Ohio-68, citations omitted.
 {¶ 29} Even if a forfeited error satisfies these requirements, however, Crim.R. 52(B) does not demand that an appellate court correct it. Id. Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice." State v. Haney, Clermont App. No. CA2005-07-068, 2006-Ohio-3899, at ¶ 50, quoting State v. Long (1978),53 Ohio St.2d 91, paragraph three of the syllabus.
 {¶ 30} Although determining whether an error occurred is the starting point of the plain error inquiry, Hill at 200, the Ohio Supreme Court has also held that "a lack of definitive *Page 10 
pronouncement from this court and the disagreement among lower courts preclude" an appellate court from finding plain error. Barnes at 27. Therefore, if the trial court committed an error, it was not plain or obvious if, at that time, there was no agreement among appellate courts or declaration from the Supreme Court on the issue. Id.
 {¶ 31} R.C. 2925.51 permits the state to submit a laboratory report as evidence in drug cases, and the statute requires the prosecution to serve a copy of the report on defendant's attorney or defendant if he is without counsel. Pursuant to the statute, the lab reports will serve as prima facie evidence of the identity and weight of the controlled substance unless defendant demands the testimony of the person who signed the report and performed the analysis within seven days of receiving the prosecutor's notice of intent to submit the report.
 {¶ 32} In this case, appellant's trial attorney admitted he received notice and a copy of the laboratory report well in advance of trial. In addition, appellant did not demand the testimony of the laboratory technician at trial. Appellant, however, now argues that the procedure required by R.C. 2925.51 does not comply with his constitutional confrontation rights in light of Crawford v. Washington (2004),541 U.S. 36, 124 S.Ct. 1354, because the statute does not require that appellant explicitly waive his right to confrontation and agree to admit the report.
 {¶ 33} In Crawford, the United States Supreme Court held that the Confrontation Clause prohibits the admission of "testimonial statements of a witness who did not appear at trial unless [the witness] was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." Crawford at 53-54. In its decision, theCrawford court made a distinction between testimonial evidence, which is impacted by the court's holding, and nontestimonial evidence, which is not. Although the Crawford court declined to provide a comprehensive definition of testimonial statements, the court indicated that business records are, "by their nature," not testimonial. Id. at 56. *Page 11 
 {¶ 34} Since Crawford, the Ohio Supreme Court ruled that the admission of an autopsy report detailing findings and conclusions as to the cause of death was admissible in an aggravated murder trial as a nontestimonial business record and that its admission without the testimony of the medical examiner who performed the autopsy did not violate defendant's constitutional confrontation rights underCrawford. State v. Craig, 110 Ohio St.3d 306, 2006-Ohio-4571. The Ohio Supreme Court, however, has yet to determine whether laboratory reports containing controlled substances analyses would fall under this same holding. Similarly, we have previously held in an OVI case that a senior operator's certificate and a solution batch certificate are nontestimonial in nature, because such documents are not determinative of appellant's guilt, but offered to prove the reliability of the instrument and operator. State v. Greene, Warren App. No. CA2005-12-129,2006-Ohio-6084. The Third District, however, has addressed the issue of whether the admission a lab report and technician's affidavit pursuant to R.C. 2925.51 violated defendant's constitutional right of confrontation. State v. Smith, Allen App. No. 1-05-39,2006-Ohio-1661.[1] In Smith, the court held that the lab report is testimonial evidence under Crawford, and defendant had a right to confront the laboratory technician; therefore, even though the state fully complied with the requirements of R.C. 2925.51, the admission of the lab reports, without a knowing, intelligent, and voluntary wavier by defendant, violated defendant's constitutional confrontation rights. Id.
 {¶ 35} Given the lack of agreement among appellate courts and no definitive pronouncement from the Ohio Supreme Court, we find that even if the trial court erred in admitting the laboratory reports without the live testimony of the lab technician, in compliance *Page 12 
with R.C. 2925.51, such error could not be plain, as it was not an obvious defect in the trial proceedings. Barnes at 27. Accordingly, we overrule appellant's second assignment of error.
 {¶ 36} Assignment of Error No. 3:
 {¶ 37} "THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 38} First, appellant argues that the jury lost its way when it found him guilty of charges involving the possession of the weapon and cocaine, but found him not guilty of the charges involving the possession of Vicodin, when the items were all located on the ground and not found on appellant. Second, appellant argues that the jury lost its way when it found him guilty of armed robbery "when the victim failed to describe a key trait of his assailant," and appellant did not have "possession of a firearm or property taken in the robbery."
 {¶ 39} When reviewing the manifest weight of the evidence to determine whether reversal is warranted, the court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the court must reverse the conviction and order a new trial. State v. Thompkins, 78 Ohio St.3d. 380, 387, 1997-Ohio-52. A court should only exercise its discretionary power to grant a new trial in the exceptional case where the evidence weighs heavily against the conviction. Id. When reviewing the evidence, an appellate court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given to the evidence. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 40} Appellant first argues that the jury "lost its way" in finding him guilty of Counts Two and Three, having weapons while under disability and possession of cocaine, because (a) the evidence presented at trial pertaining to the weapon and cocaine was "identical" to that *Page 13 
relating to Count Four, possession of hydrocodone, of which the jury found him not guilty, and (b) the handgun and crack cocaine were found on the ground, rather than directly on appellant's person.
 {¶ 41} It is well-settled that inconsistent verdicts on different counts in a multi-count indictment do not justify overturning a verdict of guilt. State v. Gapen, 104 Ohio St.3d 358, 2004-Ohio-6548, ¶ 138. "The several counts of an indictment containing more than one count are not interdependent and an inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count." Id. Furthermore, it is not for an appellate court to speculate about why the jury decided as it did. State v. Lovejoy, 79 Ohio St.3d 440, 445, 1997-Ohio-371. "Courts have always resisted inquiring into a jury's thought processes. This deference to the jury `brings to the criminal process, in addition to the collective judgment of the community, an element of needed finality.'" Id., quoting United States v. Powell (1984), 469 U.S. 57,67, 105 S.Ct. 471.
 {¶ 42} In order for a jury to convict appellant of possession of cocaine, in violation of R.C. 2925.11(A), the state had to prove beyond a reasonable doubt that appellant knowingly possessed cocaine. In order for a jury to convict appellant of having weapons under a disability, in violation of R.C. 2923.13(A)(3), the state had to prove beyond a reasonable doubt that appellant knowingly acquired, had, carried, or used a firearm and was under indictment for or had been convicted of any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse.
 {¶ 43} "Possession" can either be actual or constructive. State v.Wolery (1976), 46 Ohio St.2d 316, 329; State v. Weckner, Brown App. No. CA2001-06-009, 2002-Ohio-1012, 2002 WL 371948, at *2. A person has constructive possession of an object when he is conscious of the presence of the object and able to exercise dominion and control over it, even if it is not within his immediate physical possession.State v. Hankerson (1982), *Page 14 70 Ohio St.2d 87, syllabus; State v. Thomas (1995), 107 Ohio App.3d 239, 244;Weckner at *2. Dominion and control can be proven by circumstantial evidence alone. Weckner at *2.
 {¶ 44} Readily usable drugs in close proximity of an accused may constitute sufficient circumstantial evidence to support a finding of constructive possession. Weckner at *2, citing State v. Pruitt (1984),18 Ohio App.3d 50, 58. In this case, the state presented ample circumstantial evidence tending to prove constructive possession of both the crack cocaine and the silver .25 caliber semi-automatic pistol. The state presented evidence that at the time of his arrest, appellant had in his hands an "oversized pill" container with cocaine residue in it. In addition, Officer Erb testified that he found "two rocks" of crack cocaine along the path of appellant's flight. See also State v.learner (1998) 82 Ohio St.3d 490, 492 (evidence sufficient to establish that accused knowingly possessed cocaine where evidence indicated that he dropped a car antenna commonly used as a crack pipe, which contained cocaine residue).
 {¶ 45} In addition, possession of a firearm in violation of R.C.2923.13 may be inferred when appellant has exercised dominion and control over the area where the firearm was found. State v. Leide, Butler App. No. CA2005-08-363, 2006-Ohio-2716. The state presented evidence that in his report to police, Root stated that appellant shoved a "small," "silver" gun into his ribs and that appellant chambered a round in the gun. In addition, Officer Erb testified that he found the silver .25 caliber semi-automatic pistol (State's Exhibit 1) within pitching distance of appellant's flight path and found it with one chambered round. Root also identified the pistol as being similar to the one he saw appellant holding during the robbery.
 {¶ 46} Because the state presented ample circumstantial evidence to establish appellant's constructive possession over both the cocaine and handgun, we find appellant's argument without merit.
 {¶ 47} Next, appellant argues that the jury lost its way when it found him guilty of armed *Page 15 
robbery, Count One, once again arguing the reliability of Root's identification of appellant in his description to police, given that appellant denied specifically remembering the Darth Vader image on appellant's t-shirt and arguing that the state failed to prove appellant had "possession of a firearm or property taken in the robbery." We have already established that the court did not err in admitting Root's sufficiently reliable identification testimony. Root also gave consistent testimony at trial to that of the evidence presented in the suppression hearing. In addition, we have also established that the state presented ample circumstantial evidence to establish appellant's constructive possession of the firearm.
 {¶ 48} Finally, although appellant attacks Root's credibility, an appellate court must bear in mind the trier of fact's superior, firsthand perspective in judging the demeanor and credibility of the witnesses. State v. Drayer, 159 Ohio App.3d 189, 2004-Ohio-6120. An appellate court is ill suited to assess witness credibility, as the demeanor and attitude of witnesses do not translate well into the written record. See In re Wolfe (Feb. 16, 2001), Greene App. No. 2000-CA-60, 2001 WL 128884. We will not reverse a jury verdict where there is substantial evidence upon which a jury could reasonably conclude that all elements of the offense have been proven beyond a reasonable doubt, as the record demonstrates in this case. State v.Brown (1988) 38 Ohio St.3d 305. Accordingly, appellant's third assignment of error is overruled.
 {¶ 49} Judgment affirmed.
BRESSLER and WALSH, JJ., concur.
[1] In Smith, the Third District reaffirmed its decision in State v.Crager, Marion App. No. 9-04-54, 2005-Ohio-6868, in which the court "specifically rejected any line of reasoning that permitted laboratory reports to be admitted into evidence under the business records exception to the hearsay rule without a right of confrontation."Smith at ¶ 16. The court's decision in Crager is currently pending before the Ohio Supreme Court. State v. Crager, 109 Ohio St.3d 1423,2006-Ohio-196, accepting the appeal on Proposition of Law III. *Page 1